IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION


| | |
|---|---|
| ROQUE DE LA FUENTE, *also known as* ROCKY<br>　　　　　Plaintiff<br><br>v.<br><br>DEMOCRATIC PARTY OF TENNESSEE<br>and<br>TRE HARGETT, *Secretary of State of Tennessee*,<br>　　　　　Defendants | No. 3:16-0189 |

TO:    Honorable Aleta A. Trauger, District Judge


# R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered March 4, 2016 (Docket Entry No. 3), this action was referred to the Magistrate Judge, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), for management of the case, for decisions on all pre-trial, non-dispositive motions, to issue a Report and Recommendation on all dispositive motions, and to conduct further proceedings, if necessary, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

Presently pending are the motion to dismiss of Tre Hargett, Secretary of State of Tennessee (Docket Entry No. 18) and the motion to dismiss of the Tennessee Democratic Party (Docket Entry No. 20). Plaintiff has filed responses in opposition to both motions. *See* Docket Entry Nos. 23 and 24). For the reasons set out below, the Court recommends that the motions be granted and this action be dismissed.

# I. FACTUAL BACKGROUND

Roque "Rocky" De La Fuente ("Plaintiff") is a resident of California and is seeking to be elected as the next president of the United States of America. As such, he wanted to be listed as a presidential candidate on the Democratic Party's ballot in the Tennessee Presidential Preference Primary ("Primary Ballot"), which was conducted on March 1, 2016.

The State of Tennessee provides two methods for prospective candidates to have their names placed on the Primary Ballot: 1) gaining approval and certification by the Tennessee Secretary of State; or 2) filing a petition with the state election commission that is signed by a sufficient number of registered voters of the party whose nomination is sought. More specifically, Tenn. Code Ann. § 2-5-205 provides as follows:

> (a) The names of candidates for president of the United States shall be printed on the ballot for the presidential preference primary only if they are:
>
> (1) The names of persons whom the secretary of state, in the secretary of state's sole discretion, has determined are generally advocated or recognized as candidates in national news media throughout the United States. The secretary of state shall submit the names to the state election commission no later than the first Tuesday in December of the year before the year in which the election will be held. If a candidate who has been certified by the secretary of state wishes to be a candidate in the presidential primary of a party other than that for which the secretary of state certified the candidate, the candidate shall signify the candidate's political party preference to the state election commission no later than twelve o'clock (12:00) noon, prevailing time, on the date established in subsection (b), and the candidate's name shall be certified only for the ballot of the candidate's chosen party, as the case may be.
>
> (2) The names of persons for whom nominating petitions, signed by at least two thousand five hundred (2,500) registered voters of the party whose nomination is sought and by the candidate, are filed not later than twelve o'clock (12:00) noon, prevailing time, on the first Tuesday in December of the year before the year in which the election will be held. The nominating petitions shall be filed with the state election commission and certified duplicates with the coordinator of elections and with the chair of the

> candidate's party's state executive committee. No candidate may enter the presidential primary of more than one (1) statewide political party.

> * * *

> (c) The secretary of state shall certify to the county election commissions on the third Thursday in December the names which this section requires to be on the ballot for each political party.

Plaintiff sought to be placed on the Primary Ballot via the approval and certification method, and made a written request to Tre Hargett, the Secretary of State of Tennessee ("Hargett") on November 23, 2015, for his name to be placed on the Primary Ballot for the Democratic Party. Plaintiff outlined in his request the steps he was taking to prepare for a nationwide presidential campaign and, in support of his request, he provided a 14-page list of news media reports, which he asserted showed the national and international news media attention and coverage of his candidacy. *See* Exhibit A (Docket Entry No. 14-1) to Amended Complaint. However, Hargett did not approve and certify Plaintiff's name as one of the names to be placed on the list of presidential candidates on the Democratic Primary Ballot, as evidenced by Hargett's December 17, 2015, memorandum to the county election commission offices. *See* Exhibit B (Docket Entry No. 14-2) to Amended Complaint. Only three names were approved for the Democratic Primary Ballot: Hillary Clinton, Martin J. O'Malley, and Bernie Sanders. *Id*.

Plaintiff thereafter filed this *pro se* lawsuit against Hargett, as the Secretary of State and agent of the State of Tennessee, and against the Democratic Party of Tennessee ("TNDP"), challenging the exclusion of his name from the Primary Ballot. Plaintiff's original complaint was filed on February 5, 2016, prior to the primary election, and sought only injunctive and declaratory relief. *See* Complaint (Docket Entry No. 1). Plaintiff subsequently filed an amended complaint after the primary election was concluded, in which he withdrew his request for injunctive relief,

retained his request for declaratory relief, and added a request for nominal and compensatory damages. *See* Amended Complaint (Docket Entry No. 14).

Plaintiff brings two distinct causes of action. First, he brings a claim under 42 U.S.C. § 1983 contending that Tenn. Code Ann. § 2-5-205 is unconstitutionally vague and that Hargett acted arbitrarily and in violation of Plaintiff's due process rights when he determined that Plaintiff's name would not be certified for the Primary Ballot. *See* Amended Complaint at ¶¶ 15-22. For this claim, Plaintiff specifically seeks declaratory relief, *id*. at p.4, requesting a declaration that Tenn. Code Ann. § 2-5-205 "is unconstitutionally vague on its face for failure to provide any standards with which Defendant Hargett must follow in order to determine who is a nationally recognized candidate." *Id* at ¶ 29(a). Plaintiff also brings a claim under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d *et seq*., asserting that Hargett's refusal to certify his name on the Democratic Primary Ballot resulted in *de facto* discrimination against Plaintiff based on national origin (Plaintiff alleges that he is Hispanic), as well as against all voters in Tennessee who wished to vote for a Hispanic candidate. *Id*. at ¶¶ 23-28. As a remedy for this claim, Plaintiff seeks nominal and compensatory damages for injuries he has incurred. *Id*. at ¶ 27. Plaintiff's sole allegation against the TNDP is that, "based upon information and belief, . . . the [TNDP] provided a recommendation to Secretary Hargett which influence (sic) his decision not to include Plaintiff on the Democratic presidential primary ballot." *Id*. at ¶ 9.

In lieu of answers, Defendants have filed the pending motions to dismiss. Both Defendants argue that the Court lacks subject matter jurisdiction over this action because it no longer presents an actual case or controversy and has become moot in light of the fact that the Presidential Primary Preference election has concluded. Defendant Hargett also argues that, 1) Plaintiff's allegations fail to support his claim that Tenn. Code Ann. § 2-5-205 is unconstitutionally vague and his Title VI

4

claim that he was subjected to de facto discrimination, and, 2) the Eleventh Amendment bars the imposition of damages against him in his official capacity as the Secretary of State for the State of Tennessee. *See* Defendant Hargett's memorandum in support (Docket Entry No. 19). In addition to the subject matter jurisdiction argument, Defendant TNDP also argues that Plaintiff's claims are directed at the actions of Hargett and that Plaintiff fails to state a claim against it for any type of relief. *See* Defendant TNDP's memorandum in support (Docket Entry No. 21).

In response, Plaintiff contends that the case is not moot because there is a possibility of repetition in that he may mount another presidential campaign in the 2020 presidential election and because the effect of his exclusion from the Tennessee Primary Ballot effects the entirety of his current presidential campaign.[1] He further argues that his request for damages negates any assertion that the lawsuit has become moot. Finally, Plaintiff contends that his allegations adequately support both his vagueness challenge to Tenn. Code Ann. § 2-5-205 and his allegation that the TNDP was an active participant in the ballot access decision and is liable for damages. *See* Docket Entry Nos. 23 and 24.

## II. STANDARDS OF REVIEW

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of a claim for lack of subject matter jurisdiction. The party invoking federal jurisdiction bears the burden of establishing that subject matter jurisdiction exists. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Lewis v. Whirlpool Corp.*, 630 F.3d 484, 487 (6th Cir.

---

[1] The Court takes judicial notice of the fact that Plaintiff's name will be listed on the November 8, 2016, general election ballot in Tennessee as an independent candidate for President of the United States, indicating that he complied with the process provided by Tennessee law for ballot access as an independent presidential candidate.

2011). Failure to satisfy this burden requires dismissal of the action. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007). *See also* Rule 12(h)(3) of the Federal Rules of Civil Procedure.

A request for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is reviewed under the standard that the Court must accept as true all of the allegations contained in the complaint, resolve all doubts in the plaintiff's favor, and construe the complaint liberally in favor of the *pro se* plaintiff. *See Kottmyer v. Maas*, 436 F.3d 684 (6th Cir. 2006); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11-12 (6th Cir. 1987). However, although the complaint need not contain detailed factual allegations, the plaintiff must provide the grounds for his entitlement to relief and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The factual allegations supplied must be enough to show a plausible right to relief. *Twombly*, 550 U.S. at 555-61; *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-37 (6th Cir. 1988).

### III. CONCLUSIONS

A. Subject Matter Jurisdiction

Defendants contend that the Court does not have subject matter jurisdiction to hear the case because the primary election has already occurred and that there no longer is an actual case or controversy. Because the issue of the existence of subject matter jurisdiction is a threshold issue in

any case, *see New Hampshire Co. v. Home Sav. & Loan Co. of Youngstown, Ohio*, 581 F.3d 420, 423 (6th Cir. 2009), the Court addresses this issue first.

Under Article III of the United States Constitution, federal courts may adjudicate only actual, ongoing cases or controversies between the parties which can be remedied by the Court. *See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 478 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990). This is "a cradle-to-grave requirement," and events occurring during a case may require dismissal of the case as moot. *Fialka-Feldman v. Oakland Univ. Bd. of Trustees*, 639 F.3d 711, 713 (6th Cir. 2011); *Berger v. Cuyahoga Cnty. Bar Ass'n*, 983 F.2d 718, 724 (6th Cir. 1993). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). Mootness can also occur when the court is unable to grant the requested relief. *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986).

Defendants' argument has some basic level of appeal given that the genesis for this lawsuit was Plaintiff's desire for his name to be listed on the Democratic Party Primary Ballot, an outcome that is now an impossibility due to the completion of the primary election. Had Plaintiff merely sought injunctive relief to have his name placed on the Primary Ballot, this case would be moot. However, he has not requested only this relief, and Sixth Circuit precedent on the issue of mootness in the area of election law cases requires rejection of Defendants' argument.

It is well settled that an exception to mootness exists if the challenged activity is capable of repetition, yet evading review. *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005). This exception, albeit a narrow one, applies when (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *Federal Elections Com'n v.*

7

*Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007); *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). This case, which involved a very short time span between the challenged action and the primary election, easily satisfies the first prong, a conclusion Defendant Hargett candidly admits. *See* Docket Entry No. 19 at 7. As noted by the Sixth Circuit, "[l]egal disputes involving election laws almost always take more time to resolve than the election cycle permits." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 584 (6th Cir. 2006).

Contrary to Defendants' arguments, the second prong of the exception test is also met in this case. Defendants contend that there is no reasonable expectation or demonstrated probability that the controversy will reoccur and that it is unsupported speculation that Plaintiff will 1) again seek to be a candidate for the United States presidency four years from now, (2) again request to have his name placed on the Primary Ballot via the mechanism provided for by Tenn. Code. Ann. 2-5-205(a)(1), and 3) again have the Tennessee Secretary of State refuse to place his name on the Primary Ballot. *See* Docket Entry No. 19 at 7-8 and Docket Entry No. 21 at 5. However, the position advocated by Defendants, which focuses solely upon the reasonableness of expecting that a future controversy will occur only as to Plaintiff himself, has been rejected by the Sixth Circuit in the realm of election law challenges.

In *Lawrence*, the Sixth Circuit was faced with a challenge to an Ohio election statute which required independent congressional candidates who sought to be placed on the general election ballot to file a statement of candidacy and a nominating petition with a minimum number of signatures by the day before the primary election. 430 F.3d at 369-70. The lawsuit, brought by both a prospective candidate who had been denied placement on the general election ballot and a voter who wished to vote for the prospective candidate, was dismissed by the trial court. *Id*. Upon

appeal, the defendants argued that the case had become moot because the general election was completed during the pendency of the appeal. In rejecting this argument, the Sixth Circuit noted that, although there was no evidence in the record addressing whether the candidate who brought the lawsuit planned to run for a congressional office in a future election, the action was nonetheless not moot because:

> Although [the candidate] has not specifically stated that he plans to run in a future election, he is certainly capable of doing so, and under the circumstances it is reasonable to expect that he will do so. . . . The law at issue is still valid and applicable to both [the candidate] and any independent candidate [the voter] might wish to vote for in future election years. Therefore, the controversy is capable of repetition.
>
> Even if the court could not reasonably expect that the controversy would recur with respect to [the candidate or voter], the fact that the controversy almost invariably will recur with respect to some future potential candidate or voter in Ohio is sufficient to meet the second prong because it is somewhat relaxed in election cases. Courts have applied the capable of repetition yet evading review exception to hear challenges to election laws even when the nature of the law made it clear that the plaintiff would not suffer the same harm in the future. *See Rosario v. Rockefeller*, 410 U.S. 752, 756 n. 5, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973); *Dunn v. Blumstein*, 405 U.S. 330, 333 n. 2, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Honig*, 484 U.S. at 335–36, 108 S.Ct. 592 (Scalia, J., dissenting) (observing that "some of our election law decisions differ from the body of our mootness jurisprudence ... in dispensing with the same-party requirement entirely, focusing instead upon the great likelihood that the issue will recur between the defendant and the other members of the public." (internal citations omitted)). Since the harm Plaintiffs allege was the direct result of an extant Ohio statute, future independent congressional candidates will suffer the same harm Plaintiffs are alleging. Consequently, Plaintiffs have established that the harm they suffered is capable of repetition, yet evading review.

*Id*. at 371-72. Thus, *Lawrence* adopted a standard, in the election law context, that the second prong of the mootness exception should not be construed narrowly and can be met even if there is not reasonable expectation that the plaintiff at hand would be involved in a future controversy. The more expansive standard adopted in *Lawrence* has subsequently been followed by the Sixth Circuit in other election law cases. *See Libertarian Party of Ohio v. Husted*, _F.3d_, 2016 WL 4056398,

*7 (6th Cir. July 29, 2016) (controversy is capable of recurring, particularly given the "'somewhat relaxed'" repetition standard" that our Circuit recognizes in election cases); *Libertarian Party of Michigan v. Johnson*, 714 F.3d 929, 932 (6th Cir. 2013); *Libertarian Party of Ohio*, 462 F.3d at 585.

Defendants do not show why either *Lawrence* or the subsequent cases applying *Lawrence* to the second prong of the mootness analysis in election law cases do not control this case, and the Court finds that the instant case falls squarely within the scope of the holding of *Lawrence*. It is reasonable to expect that the Primary Ballot access mechanism set out Tenn. Code. Ann. § 2-5-205(a)(1) will be called into play with respect to a future presidential candidate who seeks to have his or her name placed on the Primary Ballot but is rejected. Thus, the same controversy would inevitably arise again. The Court finds that the subject matter jurisdiction of the Court to hear the case has not been lost because of mootness.[2]

B. Title VI Claim

Plaintiff has not responded to the Defendants' motions to dismiss the extent that they seek dismissal of his Title VI claim. Plaintiff does not address Defendants' arguments regarding his Title VI claim, let alone rebut Defendants' persuasive arguments for dismissal of this claim. Accordingly, the Court deems Plaintiff to have abandoned his Title VI claim. Dismissal of the claim in favor of Defendants is warranted.

---

[2] In *LaRouche v. Crowell*, 709 S.W.2d 585 (Tenn.Ct.App. 1985), the Tennessee appellate court had before it a challenge to Tenn. Code Ann. § 2-5-205(a) and came to a contrary decision on the issue of mootness, finding that the conclusion of the primary election rendered the challenge moot. However, the state court's decision is not controlling on this Court's determination of its own subject matter jurisdiction.

C. Plaintiff's Section 1983 Claim

42 U.S.C. § 1983 provides an avenue for an aggrieved party to seek relief for the violation of a right secured by the Constitution or laws of the United States that is caused by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

Two aspects of Plaintiff's Section 1983 claim are readily disposed of in favor of Defendants. First, an action brought under Section 1983 may be brought against only those who have acted under color of state law. Defendant TNDP is not an agent of the state, and Plaintiff has alleged no facts showing that the TNDP acted under color of state law. Plaintiff's sole allegation against Defendant TNDP is both brief and conclusory and fails to support a plausible scenario under which the TNDP can be viewed as having acted under color of state law. Accordingly, Plaintiff's Section 1983 claim warrants dismissal as to Defendant TNDP.[3]

Second, to the extent that Plaintiff's Amended Complaint can be construed to request nominal and compensatory damages under Section 1983 against Defendant Hargett,[4] this claim is legally barred. The State of Tennessee has not waived its sovereign immunity and consented to being sued under Section 1983, *Berndt v. State of Tenn.*, 796 F.2d 879, 881 (6th Cir. 1986), and,

---

[3] Plaintiff refers to the TNDP's Delegate Selection Plan, *see* Amended Complaint at ¶¶ 4, 12, and 19, but does not set forth an actual claim concerning the Delegate Selection Plan or explain the significance of the Delegate Selection Plan. Unlike ballot access statutes in other states in which political parties certify to a state election commission the names of candidates to be placed upon the primary ballot, *see De La Fuente v. S. Carolina Democratic Party*, _F.Supp.3d_, 2016 WL 741317, *3 (D.S.C. Feb. 25, 2016), the Tennessee statute confers no such role or authority on the TNDP.

[4] In contrast to the *de facto* discrimination claim for which Plaintiff specifically seeks damages, he does not request damages as a remedy for his Section 1983 vagueness claim. However, Plaintiff does make a general request for nominal and compensatory damages based on the exclusion of his name from the list of certified candidates for the Primary Ballot, *see* Amended Complaint at ¶ 29(b), which could be construed as applying to his Section 1983 claim..

thus, the Eleventh Amendment bars Plaintiff from suing a state employee named in his official capacity, such as Defendant Hargett, for monetary damages. *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Turker v. Ohio Dept. of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993). Accordingly, Plaintiff's damage claim against Defendant Hargett brought under Section 1983 must be dismissed.

Plaintiff's remaining claim is for declaratory relief based upon his argument that Tenn. Code Ann. § 2-5-205 is unconstitutionally vague because it does not provide fair notice of what standards are required in order to be considered a nationally recognized candidate and approved for placement on the Primary Ballot. *See* Amended Complaint at ¶ 18. Plaintiff contends that the statute's requirement that candidates be "generally advocated or recognized as candidates in the national news media throughout the United States" fails to provide any actual standards and permits the Secretary of State to arbitrarily deny a candidate's name from being place on the Primary Ballot. *Id*. at ¶¶ 19-20.

Due process requires laws that are not vague. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). The laws that regulate persons or entities "must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, _U.S._, 132 S.Ct. 2307, 2317, 183 L.Ed.2d 234 (2012). Fair notice is measured by what a person of ordinary intelligence would understand. *Grayned*, *supra*. The void-for-vagueness doctrine is concerned with "two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Fox*, 132 S.Ct. at 2317 (citing *Grayned*, 408 U.S. at 108-09). When reviewing a state statute that is challenged on

12

vagueness grounds, federal courts must construe the challenged statute, whenever possible, so as to avoid constitutional difficulty. *Green Party of Tennessee v. Hargett*, 700 F.3d 816, 825 (6th Cir. 2012); *Davet v. City of Cleveland*, 456 F.3d 549, 554 (6th Cir. 2006).

The Court finds that Tenn. Code. Ann. § 2-5-205(a)(1) is not unconstitutionally vague. The statute sets out a standard for placement on the Primary Ballot that is based on being "generally advocated or recognized as candidates in the national news media throughout the United States." By reference to the phrases "national news media" and "throughout the United States," the standard incorporates defining parameters and factors that a person of ordinary intelligence would understand and which would give a person of ordinary intelligence fair notice of what is required by the statute. The statute "clearly delineates its reach in words of common understanding." *Grayned*, 408 U.S. at 112 (quoting *Cameron v. Johnson*, 390 U.S. 611, 616, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968)) (internal quotations omitted). The standard also provides sufficient guidance to the Tennessee Secretary of State charged with implementing the statute, and does not permit the Tennessee Secretary of State to act with the type of unbridled discretion that is the mark of an unconstitutionally vague law. *See United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 359 (6th Cir. 1998). "[M]athematical certainty about how general standards should be applied has never been required" in order to uphold a statute from a void-for-vagueness challenge, *Grosjean v. Bommarito*, 302 Fed.App'x 430, 43 (6th Cir. 2008) (quoting *Grayned*, 408 U.S. at 110) (internal quotations omitted).

The Court further notes that the Sixth Circuit has previously rejected a vagueness challenge brought against a Michigan ballot access law that used language very similar to the language contained in Tenn. Code. Ann. § 2-5-205(a)(1). In *Kay v. Austin*, 621 F.2d 809 (6th Cir. 1980), the Michigan law stated that "the secretary of state shall issue a list of the individuals generally

13

advocated by the national news media to be potential presidential candidates for each parties' nomination by the political parties for which a presidential primary election will be held . . . ." 621 F.3d at 810. The Sixth Circuit found that this language was sufficiently capable of a narrow and reasonable application to survive a void-for-vagueness challenge. *Id*. at 812. Other courts have also upheld similarly worded statutes as constitutionally permissible. *See LaRouche v. Sheehan*, 591 F. Supp. 917, 925 (D. Md. 1984) (upholding statute that required candidates to be "generally advocated or recognized in news media through the United States or in Maryland"); *Belluso v. Poythress*, 485 F. Supp. 904, 907 (N.D. Ga. 1980) (upholding statute that required candidates to be "generally advocated or recognized in news media throughout the United States").

Plaintiff argues that the holding in *Kay v. Austin* should be disregarded because the decision was rendered 36 years ago. *See* Docket Entry No. 23 at 3. However, the case remains good law, regardless of its age, and is clearly on point with the legal issue at hand. Plaintiff further argues that "new technology and means for campaigning and advertising" should be used to determine who is a nationally recognized or advocated candidate. *Id.* While Plaintiff appears to believe that the concept of a "national news media" may be an outdated concept in modern elections, the standard at issue certainly does not rely upon archaic language that would render the statute unconstitutionally vague. *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 161, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972). Furthermore, a state has the fundamental authority to regulate its own elections, *see Burdick v. Takushi*, 504 U.S. 428, 433, 112 S. Ct. 2059, 119 L. Ed. 2d 245 (1992); *Bullock v. Carter*, 405 U.S. 134, 145, 92 S. Ct. 849, 31 L. Ed. 2d 92 (1972) , and it is the prerogative of the Tennessee legislature, not this Court nor the Plaintiff, to determine what standards are used in Tennessee's ballot access statute. The possibility that a different or alternative standard could be used does not render the Tennessee statute unconstitutionally vague. Nor is the fact Plaintiff was

listed as a candidate on the presidential primary ballots in other states, as he argues, a determining factor in the vagueness analysis.

# RECOMMENDATION

For the reasons set out herein, the Court respectfully RECOMMENDS that the motion to dismiss of Tre Hargett, Secretary of State of Tennessee (Docket Entry No. 18) and the motion to dismiss of the Tennessee Democratic Party (Docket Entry No. 20) be GRANTED and that this action be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge